**Jerry MEANS, Plaintiff,**

v.

**Dr. Colette M. CULLEN, Defendant.**

No. 02–C–0695–C.

United States District Court,
W.D. Wisconsin.

Dec. 12, 2003.

James R. Cole, for Plaintiff.

James E. McCambridge, Assistant Attorney General, Wisconsin Department of Justice, Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for monetary and declaratory relief brought pursuant to 42 U.S.C. § 1983, in which plaintiff Jerry Means, an inmate at the Wisconsin Secure Program Facility in Boscobel, Wisconsin, alleges that defendant Dr. Colette Cullen, a psychologist at the facility, was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment's protection against cruel and unusual punishment. Jurisdiction is present. 28 U.S.C. § 1331.

Currently before the court is defendant's motion for summary judgment. (At the time the motion was filed, Dr. Twila Hagan was also a defendant in this action. The portion of the motion relating to plaintiff's failure to exhaust administrative remedies against Hagan was construed as a motion to dismiss and has been granted.) The motion raises one issue: whether a reasonable finder of fact could conclude from the evidence of record that defendant was deliberately indifferent to an excessive risk to plaintiff's health or safety.

If a party opposing a motion for summary judgment submits evidence "of such a character that it would warrant the jury in finding a verdict in favor of that party," the motion will not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1329 (7th Cir.1989). Although plaintiff has submitted sufficient evidence to show that there may have been a serious risk that he would commit suicide, defendant's actions were not so unreasonable as to establish an Eighth Amendment violation. *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir.1985) (deliberate indifference standard is characterized by gross departure from ordinary care).

From the parties' proposed findings of fact, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Plaintiff is and was at all relevant times an inmate incarcerated at the Wisconsin Secure Program Facility in Boscobel, Wisconsin. Defendant is a psychologist at the facility who provided mental health services to offenders under the supervision of Dr. Twila Hagan, a licensed psychologist at the facility. Dr. Hagan supervised the other facility psychologists and provided mental health services to inmates.

Plaintiff was on Dr. Hagan's caseload and met with her approximately once a week. In Hagan's opinion, plaintiff wanted to be thought of as seriously mentally ill so that he would be transferred out of the Secure Program Facility to some other institution. She referred plaintiff to the Wisconsin Security Program Facility psychiatrist for further evaluation. The facility psychiatrist saw plaintiff on July 9, 2002. Plaintiff was rarely willing to talk to Dr. Hagan at the meetings they did have.

Plaintiff has had a history of mental health problems and has sought mental health care throughout his incarcerations. He has been diagnosed with impulse control disorder, anti-social personality disorder and borderline intellectual functioning. At all relevant times, plaintiff was taking a prescribed anti-depressant, Amitriptyline.

On May 24, 2002, plaintiff contacted facility security through the emergency intercom and asked to be seen by clinical staff. The staff noticed that the window and the camera in plaintiff's cell had been covered with paper. They ordered plaintiff to remove the paper. Plaintiff responded by taking a lit match to the toilet paper he had wrapped around his arms and ankles. The facility staff extinguished the resulting fire and placed plaintiff in a clinical observation cell. They found a piece of paper taped to the back of plaintiff's door on which plaintiff had written "I don't have the will to live. I hear the devil calling for my soul. Have you ever witnessed the devil take a soul." Dr. Apple, another psychologist at the facility, ordered that plaintiff be placed under clinical observation where special precautions are taken to insure the safety of inmates. Plaintiff remained under clinical observation until June 3, 2002, when Dr. Hagan lifted the status. On June 17, 2002, plaintiff again wrapped toilet paper around his arms and lit it on fire in the presence of

facility staff. The fire was quickly extinguished and plaintiff was taken to human services, where he was examined for potential burns.

On June 23, 2002, plaintiff indicated to security staff that he was depressed and did not want to live. The staff placed him under clinical observation immediately, and searched his cell, where they found a strip of a bed sheet that had been torn off and tied in a noose. Later that day, defendant ordered that plaintiff remain under clinical observation later that day. Defendant filled out clinical observation forms on June 24 and on June 27, 2002. At both times, she recommended that plaintiff remain in observation "due to his statements about feeling suicidal." She also checked a box indicating that plaintiff was "alleged" to be mentally ill.

■ At some point, plaintiff indicated his lack of will to live and defendant told him in response that no one would care if he died. (Plaintiff has submitted an email in which defendant denied making this statement, but the truth of the content of the email is inadmissible as hearsay. Although this email was part of the investigation of plaintiff's inmate complaint and certain investigative reports are excepted from the evidentiary rule barring hearsay, Fed.R.Evid. 803(8), statements made by third parties recorded in the report are hearsay within hearsay and are inadmissible unless they qualify for their own exception or exclusion to the hearsay rule, Fed. R.Evid. 805. 5 J. McLAUGHLIN ET AL., WEINSTEIN's FEDERAL EVIDENCE § 803.10[4][a]. The content of defendant's email does not qualify as an admission by a party opponent because it is not offered against defendant, see Fed.R.Evid. 801(d)(2)(A), and it does not qualify as a recorded recollection because defendant has not shown that she cannot recall making the statement. None of the other

hearsay exceptions or exclusions even arguably apply. Therefore, the truth of the matter asserted in the email is hearsay and cannot be considered for purposes of resolving this motion. *Morrow v. Wal–Mart Stores, Inc.,* 152 F.3d 559, 563 (7th Cir.1998) (" '[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial.' ") (quoting *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir.1997)). Because there is no other evidence to contradict plaintiff's sworn statement that defendant made this comment, I am considering the statement undisputed for the purpose of deciding this motion.) (In an inmate complaint about the incident, plaintiff described the incident as occurring at some point near the end of June 2002.)

On another occasion, defendant was called to assist in a crisis situation and passed by plaintiff's cell. Plaintiff began eating his feces and asked defendant if that made him a crazy person. She responded that it could just mean that he was looking for attention or a reaction. She told him that Dr. Hagan would come to see him shortly and proceeded to the crisis situation to which she had been called.

On July 9, 2002, Dr. Hagan released plaintiff from observation status and referred him to a facility psychiatrist. In addition, she met with plaintiff both the day before and the day after she released him from observation status. On or around July 13, 2002, plaintiff sent a written request for mental health care to the facility's clinical services. Dr. Hagan was scheduled to be out of the office that week and defendant did not respond to plaintiff. Dr. Hagan offered plaintiff mental health care on August 24, 2002, but plaintiff refused it.

OPINION

■ The Eighth Amendment requires the government " 'to provide medical care for those whom it is punishing by incarceration.' " *Snipes v. DeTella,* 95 F.3d 586, 590 (7th Cir.1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). If a prison official is deliberately indifferent to a prisoner's serious medical needs, the prisoner's right under the Eighth Amendment to be free from cruel and unusual punishment is violated. *Estelle,* 429 U.S. at 103, 97 S.Ct. 285. Plaintiff is proceeding in this case on his claim that defendant was deliberately indifferent to his serious mental illness by telling him that no one would care if he died and not responding to his requests for mental health care. In order to succeed on his claim, plaintiff must show that he had a serious medical need (objective component) and that defendant was deliberately indifferent to this need (subjective component). *Id.* at 104, 97 S.Ct. 285; *Gutierrez v. Peters,* 111 F.3d 1364, 1369 (7th Cir.1997).

### A. *Objective Prong: Serious Medical Need.*

■ Summary judgment is the "put up or shut up" moment in a lawsuit. *Johnson v. Cambridge Industries, Inc.,* 325 F.3d 892, 901 (7th Cir.2003). The burden of production is on the non-moving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 320, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions · of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. Defendant does not argue that plaintiff does not have a serious

medical need. The Court of Appeals for the Seventh Circuit has held that a legitimate risk of suicide is serious enough to meet the objective prong of this test. *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir.2000). In addition, the court has held that needless pain and suffering can satisfy the first prong, *Gutierrez*, 111 F.3d at 1371. The evidence that plaintiff twice set fire to the toilet paper he had wrapped around his limbs, wrote a note indicating his lack of will to live and ate his own feces is sufficient to allow a reasonable fact finder to conclude that plaintiff suffered from a serious mental illness.

### B. *Subjective Prong: Deliberate Indifference*

■ Only actual intent or reckless disregard will satisfy the deliberate indifference standard. *Benson*, 761 F.2d at 339. Reckless disregard is characterized by highly unreasonable conduct or a gross departure from ordinary care in a situation in which a high degree of danger is readily apparent. *Id.* Plaintiff asserts that defendant acted with deliberate indifference when she told him that no one would care if he died and when she failed to respond to his request for mental health care, even though plaintiff's assigned psychologist was not scheduled to return for nearly ten days.

■ The Supreme Court has held that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). *See also Matos ex rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003); *Sanville v. McCaughtry*, 266 F.3d 724, 735 (7th Cir.2001) (psychiatrist not liable under Eighth Amendment for con-

cluding incorrectly that inmate was not actually mentally ill). It is plaintiff's burden to prove that defendant was aware of "the significant likelihood that an inmate may imminently seek to take his own life and [failed to] take reasonable steps to prevent [him] from taking this act." *Estate of Novack*, 226 F.3d at 529. "[S]trange behavior alone, without indications that that behavior has a substantial likelihood of taking a suicidal turn, is not sufficient to impute subjective knowledge of a high suicide risk to jail personnel." *Id.* at 530.

■ The evidence shows that defendant was aware of facts from which she could have concluded that there was a serious risk that plaintiff would attempt to take his own life or severely injure himself. Defendant knew that plaintiff had threatened to kill himself. She had completed clinical observation forms on June 24 and 27, 2002, in which she had recommended that plaintiff remain in observation because of his "statements about feeling suicidal." She also witnessed him eat his own feces.

■ However, even if I accept as true that defendant told plaintiff that no one would care if he died, I cannot find that this comment amounts to a violation of plaintiff's rights under the Eighth Amendment. Any deliberate indifference analysis requires the court to consider the totality of the care provided. *Dunigan v. Winnebago County*, 165 F.3d 587, 591 (7th Cir.1999). Defendant allegedly made the statement at a time when she had repeatedly recommended that plaintiff remain under clinical observation to ensure his safety. At most, the statement demonstrates a lack of sensitivity, rather than such a gross departure from ordinary care that plaintiff's Eighth Amendment rights were violated. Defendant insured that plaintiff remained under clinical observa-

**1154**

tion where he was protected from harming himself.

 Defendant's failure to respond to plaintiff's request for mental health services does not rise to the level of criminal recklessness required to make out an Eighth Amendment violation. *Benson,* 761 F.2d at 339. Inadvertent error, negligence, gross negligence and even ordinary malpractice are insufficient grounds for invoking the Eighth Amendment. *Vance,* 97 F.3d at 992; *Snipes,* 95 F.3d at 590–91. Although the government does have a duty to provide medical care for those it punishes by incarceration, *Snipes,* 95 F.3d at 590, a prisoner is not entitled to whatever treatment he seeks. The mental health care plaintiff sought was talking to defendant. Although defendant did not respond, plaintiff has not shown that her failure to do so deprived him of meaningful and appropriate treatment.

Plaintiff suggested no reason why he could not talk with the psychiatrist to whom he had been referred by Dr. Hagan or some other member of the facility's clinical staff. In addition he has submitted no evidence to suggest that if he was in danger of harming himself, facility staff could not place him in clinical observation in order to protect him as they did on May 24, 2002 and June 23, 2002.

A prisoner's Eighth Amendment rights are violated when "medical treatment is 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.'" *Snipes,* 95 F.3d at 592 (citations omitted). Because defendant's actions deprived plaintiff only of the treatment he sought at the time and not of any meaningful treatment, they do not show deliberate indifference. Accordingly, defendant's motion for summary judgment will be granted.

### ORDER

IT IS ORDERED that defendant Dr. Colette Cullen's motion for summary judgment of plaintiff Jerry Means's claim that she violated his rights under the Eighth Amendment by denying him adequate medical treatment is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.